IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WISCONSIN VALLEY IMPROVEMENT
COMPANY,

                                                     OPINION AND ORDER

                      Plaintiff,

                                                     08-cv-378-slc[1]

    v.

UNITED STATES OF AMERICA,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Wisconsin Valley Improvement Company filed this civil action under 28 U.S.C. § 2409a to quiet title in several pieces of real property in which defendant United States of America claims an interest. This court has exclusive original jurisdiction over actions filed under § 2409a. 28 U.S.C. § 1346(f). This case is before the court on defendant's motion to dismiss, dkt. #4.

      Although defendant filed its motion under both Fed. R. Civ. P. 12(b)(1) and (b)(6), I need address only the 12(b)(1) jurisdictional issue defendant raises because that issue is

---

[1] Although this case was randomly assigned to Magistrate Judge Crocker and neither party has declined his jurisdiction, I am assuming jurisdiction of this case for the sole purpose of issuing this order.

1

determinative. I conclude that plaintiff's action is barred by the applicable statute of limitation, 28 U.S.C. § 2409a(g), because plaintiff knew or should have known of defendant's adverse interest in the relevant real property more than 12 years before it filed this action. I am not persuaded by plaintiff's argument that the 12-year period never started to run because defendant never gave plaintiff reason to believe it was challenging plaintiff's specific easements. In fact, defendant made this challenge explicit. Thus, this action must be dismissed for want of subject matter jurisdiction. (It is not always clear whether a statue of limitations defense raises a question of subject matter jurisdiction. E.g., General Auto Service Station v. City of Chicago, 526 F.3d 991, 1001 (7th Cir. 2008) ("The expiration of the statute of limitations is an affirmative defense that does not affect our subject matter jurisdiction to hear the case.") (citing Jogi v. Voges, 480 F.3d 822, 836 (7th Cir. 2007)); Continental Ins. Co. v. M/V Orsula, 354 F.3d 603, 606 (7th Cir. 2003) (statute of limitations in Carriage of Goods by Sea Act is not jurisdictional because it is defense that can be waived). The situation is different in cases involving the federal government, because of its sovereign immunity. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983) (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)).)

In determining whether there is subject matter jurisdiction, I have "not only the right,

but the duty to look beyond the allegations of the complaint," Hay v. Indiana State Board of Tax Commissioners, 312 F.3d 876, 879 (7th Cir. 2002), "to evidence that calls the court's jurisdiction into doubt," Bastien v. AT&T Wireless Services, Inc., 205 F.3d 983, 990 (7th Cir. 2000). Accordingly, I draw the following facts from plaintiff's complaint, the parties' briefs, declarations and exhibits submitted in support of and opposition to defendant's present motion and the opinion of the Court of Appeals for the District of Columbia in Wisconsin Valley Improvement Co. v. Federal Energy Regulatory Commission, 236 F.3d 738 (D.C. Cir. 2001).

JURISDICTIONAL FACTS

A. Parties

Plaintiff Wisconsin Valley Improvement Company is a statutory corporation created in 1907 under Chapter 335 of the Wisconsin Statutes, now Wis. Stat. § 182.70. Plaintiff was created for the building, maintaining and operating of dams and reservoirs on the Wisconsin River and its tributaries in an effort to improve navigation, decrease the hazard of flooding and provide a uniform flow of water for all public purposes. Defendant United States of America is a sovereign comprising 50 states. It operates some business through departments, including the United States Forest Service, which is part of the Department of Agriculture.

3

B.  Plaintiff's Flowage Easements

Since 1907, plaintiff has flowed water from its reservoirs over sections of 59 parcels of real property located in Vilas, Oneida and Forest Counties in Wisconsin and in Gogebic County in Michigan.  Although defendant owns these 59 parcels in fee simple, plaintiff asserts prescriptive flowage easements over sections of all 59 parcels because it has continuously and adversely flowed water onto the 59 parcels for a minimum of ten years. Plaintiff contends that its prescriptive easement rights vested before defendant acquired ownership of the parcels.  Plaintiff filed this action on July 2, 2008, seeking a declaration that it has a prescriptive easement to flow water over sections of the pertinent parcels.

C.  Plaintiff's 1991 License Renewal

In 1991, plaintiff sought to renew its license with the Federal Energy Regulatory Commission, also referred to as FERC, for the operation of its hydropower project, the Wisconsin River Headwaters System, which consists of dams and reservoirs on the Wisconsin and Tomahawk Rivers. Wisconsin Valley, 236 F.3d at 741.  During the renewal process, the Forest Service, an agency of the United States Department of Agriculture, and the United States Department of the Interior asked FERC to impose several new conditions on plaintiff's license that would restrict its operation of the project.  The agencies argued that the conditions were proper because the reservoir overflows lands within the Forest Service's

4

jurisdiction and lands administered by the Interior Department. Id. One requested condition was that plaintiff implement a wild rice enhancement plan under the Federal Power Act § 4(e), 16 U.S.C. § 796(2). Id.

On April 12, 1995, during the renewal process, plaintiff filed a motion with FERC, challenging the authority of the Forest Service and Department of the Interior to impose mandatory license conditions. Wisconsin Valley Improvement Co., 76 FERC ¶ 61,050, 61,226 n.10 (1996). Plaintiff disputed the scope of the agencies' authority to impose conditions on the ground that plaintiff held prescriptive flowage easements over the federal lands on which its reservoir flowed water and therefore, it was not using or occupying any federal real property or property interest under § 4(e). Id. at ¶ 61,226; see also Wisconsin Valley, 236 F.3d at 742. In its motion, plaintiff requested an administrative trial-type hearing to determine whether it had prescriptive easements over the pertinent parcels of land. Id. at ¶ 61,226 n.10. Both the Forest Service and Interior opposed the motion. Id.

In its January 18, 1996 opposition to plaintiff's motion, the Forest Service agency argued that even if plaintiff had prescriptive flowage easements over defendant's land, the agency was not divested of the authority to impose mandatory license conditions pursuant to § 4(e). Vandlik Decl., dkt. #5, Exh. 1 at 13. The Forest Service asserted that plaintiff's only option for asserting flowage rights was to bring a quiet title action under 28 U.S.C. § 2409a, which plaintiff had not done. Id. Specifically, the Forest Service stated,

5

> The mere presence of outstanding flowage rights, does not divest the United States of title, even if one assumes, for the sake of argument, that title to all of the National Forest System land within [plaintiff's] project is encumbered by outstanding flowage rights which benefit plaintiff.
>
> Further, absent bringing an action pursuant to 28 U.S.C. 2409a, plaintiff cannot maintain . . . that the United States' title is burdened by flowage easements gained by prescription.
>
> . . . .
>
> Moreover, the above discussion assumes, for the sake of argument *only*, that all of the National Forest System lands within the project are burdened with flowage rights. Clearly, such an assumption is not even relevant to the case at hand.

Id. (Emphasis added.) In an additional response the Forest Service stated,

> [Plaintiff] . . . improperly suggests that the Commission should hold a hearing to determine whether the title of the United States is burdened by prescriptive flowage rights to the benefit of [plaintiff]. As 28 U.S.C. § 2409a is the exclusive mechanism to challenge title to the United States, the Federal District Court is the exclusive forum to hear such a challenge. . . . The Commission is without jurisdiction to make a determination on the quality of title held by the United States.

Vandlik Decl., dkt. #5, Exh. 2 at 10.

On July 18, 1996, FERC issued an order renewing plaintiff's license that included the agencies' requested conditions. Wisconsin Valley, 236 F.3d at 741. Although plaintiff challenged the new conditions, they remained. Plaintiff petitioned the Court of Appeals for the District of Columbia Circuit for review of FERC's order.

In addressing plaintiff's contention that the federal agencies did not have authority under § 4(e) to mandate conditions on plaintiff's license, the appellate court determined that

6

"[t]he question whether [plaintiff] owns flowage easements over the lands is irrelevant to whether the lands themselves are part of a federal reservation." Id. at 742.  Nonetheless, the appellate court explained that "[b]oth FERC and the agencies den[ied] that [plaintiff] ha[d] *any* cognizable property interest in the flooded lands," id. at 743, and "[s]o far as the underlying questions of which property interest are owned by which parties, neither FERC nor this Court have jurisdiction to try title." Id. (Emphasis added.)

OPINION

Defendant contends that plaintiff is barred from bringing this quiet title action because it did not do so within 12 years of the time it knew or should have known that defendant had a claim adverse to plaintiff's alleged prescriptive easement rights. Plaintiff disagrees, contending it did not know and had no way of knowing that defendant had a claim adverse to plaintiff's alleged prescriptive easement rights until it filed this action. Although defendant is the party challenging subject matter jurisdiction, the burden of proof to prove that subject matter jurisdiction exists is on plaintiff, as the party asserting jurisdiction. United Phosphorus, Ltd. v. Angus Chemical Co., 322 F.3d 942, 946 (7th Cir. 2003) (citation omitted).

The Quiet Title Act was intended "to provide the exclusive means by which adverse claimants could challenge the United States' title to real property." Block v. North Dakota,

461 U.S. 273, 286 (1983). Because a prescriptive easement is an interest in real property, Schilling v. Wisconsin Department of Natural Resources, 298 F. Supp. 2d 800, 802 (W.D. Wis. 2003) (citing Buckeye Pipe Line Co. v. Keating, 229 F.2d 795, 798 (7th Cir. 1956)), plaintiff's claim to a prescriptive easement over defendant's real property must be brought under the Quiet Title Act, 28 U.S.C. § 2409a.

As a sovereign, the United States is immune from suit unless it consents. United States v. Dalm, 494 U.S. 596, 608 (1990). Because any such consent would be a waiver of sovereign immunity, it is construed strictly in favor of the sovereign. Lane v. Pena, 518 U.S. 187, 192 (1996). In particular, "where the government's consent as sovereign to be sued is conditioned upon the filing of suit within a specified period of time, strict compliance with that condition is a jurisdictional prerequisite." Davis v. United States Department of Justice, 204 F.3d 723, 726 (7th Cir. 2000) (quotation omitted).

Under the Quiet Title Act, defendant has waived its sovereign immunity in civil actions "to adjudicate a disputed title to real property in which the United States claims an interest." However, defendant limited the extent of its waiver as follows:

> Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date that plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. § 2409a(g). In the Quiet Title Act, "[t]he limitation period is a central condition

8

of the consent given by the Act." United States v. Mottaz, 476 U.S. 834, 843 (1986). In fact, the Act's limitations provision "reflects a clear congressional judgment that the national public interest requires barring stale challenges to the United States' claim to real property, whatever the merits of those challenges." Id at 851. Therefore, the timeliness of a quiet title action "is a jurisdictional prerequisite to suit under [the Act]." Knapp v. United States, 636 F.2d 279, 282 (10th Cir. 1980). Regardless how any court of appeals has construed the Act, because the Act waives sovereign immunity, its statute of limitations should not be construed in a manner that would "'extend the waiver beyond that which Congress intended.'" Block, 461 U.S. at 287 (quoting United States v. Kubrick, 444 U.S. 111, 117-18 (1979)).

Although the Court of Appeals for the Seventh Circuit has not construed the Act's bar on actions not "commenced within twelve years of the date upon which it accrued," several other circuits have. I use their reasoning to guide my analysis. I begin with the text of the Act, which states that the test for determining when an action has "accrued" is to determine when "plaintiff or his predecessor in interest knew or should have known of the claim of the United States." 28 U.S.C. § 2409a(g). In applying this "accrued" test, several circuits have reasoned that "[k]nowledge of the claim's full contours is not required. All that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's." Knapp, 636 F.2d at 283; Kingman Reef Atoll Investments, L.L.C. v. United States, 541 F.3d 1189, 1198 (9th Cir. 2008); Spirit Lake Tribe v. North Dakota, 262 F.3d

732, 738 (8th Cir. 2001); Bank One Texas v. United States, 157 F.3d 397, 402 n.11 (5th Cir. 1998); Richmond, Fredericksburg & Potomac Railroad Co. v. United States, 945 F.2d 765, 770 (4th Cir. 1991).

The central issue is whether plaintiff's quiet title cause of action accrued 12 years before it filed this suit, that is, before July 2, 1996. Defendant contends that it accrued on January 19, 1996 or February 27, 1996, when defendant's agencies filed briefs in plaintiff's license renewal process that gave plaintiff a reasonable awareness that defendant claimed some interest adverse to plaintiff's easement rights. Plaintiff contends that the statements in those briefs were not enough to trigger the statute of limitations because they did not say explicitly that plaintiff could not flow water over defendant's property. I cannot agree with plaintiff's contention. To do so would be to extend the Act's waiver of sovereign immunity beyond Congress's intent.

Requiring an explicit statement of defendant's adverse claim to trigger the statute of limitations would ignore the Act's provision that an action shall accrue when a plaintiff "should have known" of the United States' claim. If a plaintiff received an explicit statement telling it not to flow water over federal property, it would *know* of the United States' adverse claim against any easement. If an explicit statement concerning the adverse claim were required, the Act's "should have known" language would be read out of the statute. As two circuit courts of appeals have held, "explicit notice" of the government's claim is not required

10

to trigger the statute of limitations. Spirit Lake Tribe, 262 F.3d at 738; see also Kingman Reef Atoll, 541 F.3d at 1198 (government's claim need not be clear and unambiguous)(citing Spirit Lake Tribe).

Accordingly, the issue becomes whether plaintiff should have known, that is, when it had a reasonable awareness, that defendant's property interests were adverse to its own. Plaintiff advances a theory that because it alleges prescriptive easement rights, the limitations period does not start to run until the government tries to restrict the specific benefits that plaintiff previously enjoyed. It points out that "knowledge of a government claim of ownership may be entirely consistent with a plaintiff's claim [of an easement]." Michel v. United States, 65 F.3d 130, 132 (9th Cir. 1995). Thus, for example, for an individual asserting an easement granting a right of access over governmental land, the statute of limitations does not start running when he knows that the government has fee simple interest in the land. Instead, the statute starts to run when the government acts to deny the individual his particular interest in the land, which is his easement. Id. I do not disagree with plaintiff's analysis of the law in general or Michel in particular, but neither is applicable to plaintiff's situation. Defendant made it clear to plaintiff in early 1996 that it did not agree with plaintiff's position that it enjoyed prescriptive easements over defendant's property.

In particular, during plaintiff's license renewal process, the Forest Service agency

11

disputed whether plaintiff possessed any prescriptive easements over federal lands. In both its January 19, 1996 and February 27, 1996 briefs, the Forest Service made it clear that any reference to plaintiff's having prescriptive easements was made as an assumption *only* for sake of argument, not because it was conceding plaintiff's position. As the Forest Service said in its briefs, if plaintiff believed it had prescriptive easements, it would have to bring an action under the Quiet Title Act.

These statements rebutted plaintiff's assertion that it had prescriptive easements over federal land. Plaintiff may not have had knowledge of the full extent of defendant's adverse interest, but such knowledge is not required to trigger the statute of limitations. Knapp, 636 F.2d at 283. Plaintiff cannot deny that it "should have known" of defendant's claim of *some* interest adverse to plaintiff's. Id.

The latest date on which plaintiff's quiet title cause of action accrued was on February 27, 1996, which means that plaintiff had until February 27, 2008, to file its action under the Act's 12-year statute of limitations. Plaintiff was about four months too late.

Plaintiff emphasizes the fact that it has flowed its reservoirs over the pertinent federal property for more than 100 years, but that fact goes to the merits of plaintiff's claim. The statute of limitations bar makes the merits irrelevant. Mottaz, 476 U.S. at 851. In fact, plaintiff's assertion of a 100-year claim, during which it recorded no easements and asserted no claim to prescriptive easements, supports the conclusion that plaintiff's claim is the type

12

of "stale challenge[] to the United States' claim to real property" that the Act's statute of limitations was intended to bar. Id.

In a last ditch effort, plaintiff argues that the statute of limitations should be reset because defendant's failure to stop plaintiff from flowing its reservoirs over the pertinent federal property after 1996 operated as an abandonment of its position that plaintiff had no flowage easements. Plaintiff cites Michel, 65 F.3d 130, in support of its contention.

In Michel, the United States alleged that the plaintiff had notice of the government's adverse claim in 1960. Id. at 132. However, the evidence showed that the government had written to the plaintiff in 1970 acknowledging his "historic right of access" to the pertinent federal lands in the form of an easement over the lands. Id. at 133. The court of appeals decided that the government's incorporation of the 1970 letter into a 1984 agreement with the plaintiff "could be construed as an abandonment of the government's claim." Id.

In this case, plaintiff has not provided any evidence from which I can infer that defendant ever acknowledged that plaintiff had prescriptive easements over federal lands after Forest Service filed the 1996 briefs. Although defendant did not physically prevent plaintiff from flowing its reservoirs over federal land, defendant did not need to take such action to retain its position that plaintiff did not possess any prescriptive easements. After all, defendant was both regulating the land and charging plaintiff for the use of it under plaintiff's renewed FERC license.

13

Moreover, "[i]t is well established that the United States does not abandon its claims to property by inaction." Kingman Reef Atoll, 541 F.3d at 1199 (citing United States v. California, 332 U.S. 19, 40 (1947)). Failing to stop plaintiff from flowing water over federal lands in which plaintiff claimed to have easements would not constitute an abandonment of defendant's claim to uninhibited title to the property. As the Court of Appeals for the District of Columbia Circuit noted in Wisconsin Valley, 236 F.3d at 743, both the Forest Service agency and FERC maintained the position that plaintiff did not have any prescriptive easements during plaintiff's appeal of its FERC license. Plaintiff has failed to present any evidence from which it can be inferred that defendant ever abandoned its claim that plaintiff did not possess prescriptive easements over pertinent federal lands.

In summary, plaintiff should have known as of February 27, 1996 of defendant's claim that plaintiff did not have prescriptive easements over certain federal lands. Under 28 U.S.C. § 2409a(g), plaintiff had until February 27, 2008, before the statute of limitations ran on its quiet title action regarding its alleged prescriptive easements. In waiting until July 2, 2008 to file this action, plaintiff failed to comply with the conditions of defendant's waiver of sovereign immunity under the Quiet Title Act. Therefore, this action must be dismissed for lack of subject matter jurisdiction.

ORDER

IT IS ORDERED that defendant United States of America's motion to dismiss, dkt. #4, is GRANTED and this case is DISMISSED for lack of subject matter jurisdiction.

Entered this 2nd day of December, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge